# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM DIVISION

LASLO GROSS and SUSAN GROSS,

Plaintiffs,

v.

SMARTSKY NETWORKS LLC, a

Delaware limited liability company,

Defendant.



## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Laslo Gross and Susan Gross ("Plaintiffs" or the "Grosses"), Pro Se, hereby file this Complaint against Defendant SmartSky Networks LLC ("Defendant" or "SmartSky") and allege as follows.

## NATURE OF THE ACTION

1. This is an action for abuse of process and defamation, arising from SmartSky's baseless and malicious legal actions against Plaintiffs and related entities. SmartSky's actions represented a coordinated campaign of legal harassment designed to stifle competition and inflict maximum damage on Plaintiffs' business and individual reputations in the wireless communications market. Plaintiffs seek compensatory and punitive damages and other relief as the Court deems just and proper.

1

## PARTIES

2. Plaintiff Laslo Gross is an individual residing in Wake County, North Carolina. Mr. Gross is an experienced entrepreneur with more than 40 years of experience in the wireless communications field. He has a well-established reputation in the industry having held managerial roles at the largest telecommunications provider in the world (at the time) as well as multiple successful ventures in the telecommunications sector.

3. Plaintiff Susan Gross is an individual residing in Wake County, North Carolina. Mrs. Gross is a business executive with more than 40 years of experience in business affairs.

4. Defendant SmartSky Networks LLC is a Delaware limited liability company with its principal place of business at 4690 First Flight Drive, Charlotte, North Carolina 28208. SmartSky is a provider of air-to-ground (ATG) communications solutions for the aviation market and a direct competitor to Plaintiffs' business interests.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction under 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. The amount in controversy is supported by the damages sought, which total $12,200,000 in compensatory damages, plus punitive damages as allowed by law.

6. Venue is proper in this district under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims occurred in this district, including the filing of legal actions by SmartSky and the resulting damage to Plaintiffs' business interests and reputation.

## INDUSTRY CONTEXT

7. The telecommunications industry is highly specialized and competitive, particularly the segment focused on air-to-ground (ATG) communications for the aviation market. Success in this field relies heavily on technical expertise, industry relationships, and reputation. The actions of SmartSky, as detailed herein, were particularly damaging given this context, effectively impeding Plaintiffs' ability to operate within their area of expertise and severely impacting their professional standing.

8. In the ATG communications market, reputation is paramount. Companies and individuals known for innovation, reliability, and ethical business practices are more likely to secure contracts and partnerships. Conversely, allegations of dishonesty or legal impropriety, even if unfounded, can have severe and long-lasting consequences on business prospects.

9. The specialized nature of ATG communications means that there are a limited number of major players and potential clients in the market. As such, the loss of even a single business opportunity can have significant financial implications. Moreover, the high-stakes nature of the wireless communications sector means that clients are risk-averse and may be hesitant to engage with individuals or companies facing legal challenges or reputational issues.

## FACTUAL ALLEGATIONS

10. For a detailed chronology of events, please refer to Exhibit U: Timeline of Key Events. The following paragraphs highlight the most significant occurrences:

19. On February 7, 2022, an arbitration ruling was confirmed in case number 1:20-cv-00834 against Wireless Systems Solutions LLC ("WSS") and other related parties including Plaintiffs. This ruling included a Permanent Injunction that Plaintiffs contend violates Rule

3

65(d) of the Federal Rules of Civil Procedure due to its overly broad and ambiguous terms.

(See Exhibit B: Arbitration Ruling and Permanent Injunction).

20. The relevant portions of the Permanent Injunction state:

> "Wireless Systems Solutions, LLC, DAG Wireless Ltd., DAG Wireless USA, LLC, Laslo Gross, Susan Gross, and David D. Gross, and each of them, as well as persons or entities acting in concert or participation with them or otherwise on their behalf, including their successors or assigns, should be permanently enjoined and prohibited from engaging, directly or indirectly, in any of the following activities or conduct:
> a. making, causing to be made, developing, certifying or attempting to certify with any government agency, using, copying, modifying, marketing, promoting, offering to sell, selling, or distributing any or all **"Product" or "Developed IP" (as those terms are defined in the Teaming Agreement executed by SmartSky Networks, LLC and Wireless Systems Solutions, LLC)** developed or produced by Wireless Systems Solutions, LLC, DAG Wireless Ltd., or DAG Wireless USA, LLC pursuant to or in connection with any agreement executed between by SmartSky Networks, LLC and Wireless Systems Solutions, LLC, or derivatives of such **"Product" or "Developed IP,"** for use within the **"SSN Field of Use" (as that term is defined in the Teaming Agreement executed by SmartSky Networks, LLC and Wireless Systems Solutions, LLC);**
> b. **making or causing to be made any use or disclosure of any or all "Confidential Information" of SmartSky Networks, LLC, "SSN IP," or "SSN Tools" (as those terms are defined in the Teaming Agreement executed by SmartSky Networks, LLC and Wireless Systems Solutions, LLC), or derivatives thereof;**
> c. **making or causing to be made any use or disclosure of information of SmartSky Networks, LLC subject to a non-disclosure agreement which they, or any of them, executed with SmartSky Networks, LLC, including that Non-Disclosure Agreement dated January 15, 2019;**

> 4. ..passing off all or any part of SmartSky Networks, LLC's "Confidential Information," "Product," "SSN IP," "SSN Tools," or "Developed IP" (as those terms are defined in the Teaming Agreement executed by SmartSky Networks, LLC and Wireless Systems Solutions, LLC), including derivatives thereof, as the property of Wireless Systems Solutions

21. On March 9, 2022, WSS filed for Chapter 11 bankruptcy protection to reorganize and establish a plan to repay its creditors. This filing was made in good faith to restructure the business and continue operations.

22. On March 21, 2022, less than two weeks after WSS filed for Chapter 11, SmartSky filed a Motion for Contempt to Hold [Defendants] i.e, WSS and the Grosses among others in Contempt for Violation of the Permanent Injunction and Expedited Discovery in this Court. SmartSky sought civil contempt charges against [the Defendants] WSS and the Grosses among others, and criminal contempt charges including a request for Laslo Gross's incarceration, based on alleged violations of the Permanent Injunction perpetrated by Laslo Gross. (See Exhibit A: SmartSky's Brief ISO Motion for Contempt).

4

23. SmartSky sought daily fines of $2,500.00 until [the Defendants] WSS and the Grosses, among others, ceased "all development of, and all other activities involving, any ATG wireless communication system or products for the aviation market that operate in the unlicensed FCC band (including the 2.4 GHz and 5 GHz bands)."

24. SmartSky's motion also named DAG WIRELESS LTD., DAG WIRELESS USA LLC, and Susan Gross, despite the lack of evidence that these parties were involved in any alleged violation.

25. SmartSky filed a motion for relief from the automatic stay in WSS' Chapter 11 filing (and David D. Gross Chapter 7 filing) in the Bankruptcy Court to permit SmartSky to pursue the Contempt Motion in the District Court against WSS and David D. Gross.

26. SmartSky's claims were based on insufficient uncorroborated evidence and conclusory assertions. The primary basis for SmartSky's motion was a single declaration by an individual whose credibility and knowledge were questionable. (See Exhibit A, Newell declaration)

27. Specifically, the motion for contempt was based on a seven-minute phone call made by Laslo Gross (who identified himself as representing WSS) requesting information for a publicly available, non-customized antenna to be used in the ATG communications market.

28. Under the Permanent Injunction, the Plaintiffs were only prohibited from using SmartSky Intellectual Property. However, SmartSky conflated and sought to expand the Injunction to encompass any activities in the ATG market and the publicly available unlicensed 2.4 GHz and 5GHz frequency bands, which is not addressed or defined in the Permanent Injunction.

29. Therefore, SmartSky's motion for contempt was not only without merit as the Grosses (and other related parties) were ultimately cleared of any violation but SmartSky's attempts to

effectively broaden the Permanent Injunction when they knew there was no legal basis to do so clearly demonstrate their primary objective was to damage the Grosses at any price, even at the expense of abusing the legal process.

30. To investigate these assertions, the Plaintiffs requested the Court appoint a third-party independent Examiner (which the court agreed to) despite SmartSky's vehement opposition. The Examiner's report, submitted on July 14, 2022, exonerated WSS, indicating that it had not violated the Permanent Injunction. (See Exhibit D: Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code).

31. During the discovery process associated with the investigation, the WSS and the Grosses filed a Brief on June 17, 2022 (attached as Exhibit C) in support of their Motion to Stay the initial Motion for violation of the Permanent Injunction pending an appeal in the 4th Circuit[1]. As indicated, **"SmartSky was unable to identify a single trade secret or any specific SSN IP that it contends is being used by WSS."** (Paragraph C, page 6)

32. And SmartSky's response to the Examiner's discovery requests stated:

> **"SmartSky is unable to more specifically identify the exact SmartSky intellectual property and/or proprietary information, or derivatives thereof, that it contends are being used by WSS or its co-defendants to develop their ATG Aircraft Products in violation of the Injunction."**

---

[1] WSS, the other corporate entities, David Gross and the Grosses appealed confirmation of the Arbitration Award in the 4th circuit Appellate Court in July 2022.

33. On July 14, 2022, the Examiner submitted a report to the Bankruptcy Court (submitted to this Court on August 11, 2022) that exonerated WSS, indicating that it had not violated the Permanent Injunction. (Plaintiffs Laslo Gross and Susan L. Gross were prohibited by the Bankruptcy Court from accessing this report and therefore, cannot submit this document as an exhibit with this Complaint; however, a copy was filed with this court as indicated above).

34. Additionally, WSS included the following in its Chapter 11 disclosure statement attached as Exhibit D, page 6, 2ⁿᵈ paragraph, **"The report concluded that the Debtor was not violating the Injunction at the time of the report."**

35. Although SmartSky participated in the examination process, they objected to the conclusions of the Examiner's Report and its publication arguing that it would confuse the market (rather than accept exoneration of WSS). SmartSky rejected any conclusion other than what they had alleged and therefore, directed their efforts to prevent the publication of any conclusion that did not support their allegations.

36. The above scenario is just one example of how SmartSky used its creditor position as leverage to achieve its adversarial objectives.

37. SmartSky justified its actions in a hearing in the Bankruptcy Court on July 28, 2022. To wit, SmartSky's counsel stated:

> **"Part of the reason for the findings [of the Examiner] of no violation is because WSS is at such a very early stage of the development of their products, they basically only got . . . preliminary components . . . that haven't been put together into anything. . . . [T]he specific findings [of] no violation are in part because they are at that early stage and they're only, the findings are only based on the current product development and not on what WSS may be planning to do going forward."**

7

(Exhibit E) [From Audio Recording of July 28, 2022, Hearing, at 24:32 into the recording (E.D.N.C. Bankr. ECF Doc. 205).

38. ***In other words, SmartSky's Contempt Motion was filed prematurely, erroneously and maliciously with no corroborating evidence to hijack the Chapter 11 hearings so as to incur administrative and legal fees which would force WSS to convert to Chapter 7. SmartSky did this because they had the financial means to do so, without regard for any of the other WSS creditors.***

39. On September 29, 2022, this Court ruled that SmartSky's "declaration, standing alone, is [was] insufficient to establish by clear and convincing evidence that the [Defendants] WSS are in violation of the injunction." (See Exhibit F: Order on Contempt Motion)

40. On October 12, 2022, WSS was forced to convert to Chapter 7 due to the significant administrative fees incurred in defending against SmartSky's vicious pursuit of WSS (See Exhibit L: Bankruptcy Court Order conversion).

41. Absent the protection of a stay afforded by the bankruptcy court, WSS was obliged to direct resources (that could have been used to reorganize WSS and repay creditors) to defend against SmartSky's actions.

42. SmartSky's objective was to damage the WSS (even at their own and the other creditors' expense) rather than obtain relief based on an approved confirmation plan.

43. However, even after the Examiner's findings and this Court's ruling, SmartSky was not deterred and continued its aggressive and punitive legal tactics.

44. SmartSky continued its efforts against the Individuals (the Grosses and David Gross) through an overly broad discovery process, culminating in a February 28, 2023 filing of a Motion for

8

Stay in this Court. This motion was based on **speculative future violations**, despite the lack of any evidence of current or past violations. (See Exhibit G: SmartSky's Motion for Stay)

45. SmartSky's motion for a stay is another example of the pattern employed by SmartSky to harm Laslo Gross and then, by default, Susan Gross and David Gross by association in seeking to expand the scope of the Permanent Injunction.

46. SmartSky maliciously asserted in its Motion to Stay with no corroborating evidence that:

**" there is no dispute that until it ceased doing business WSS was developing 5G wireless communications products with similar air-to-ground communications capabilities to those products WSS developed for SmartSky that were protected by and as SmartSky intellectual property and Developed IP, and that the Defendants have stonewalled in responding to the contempt discovery allowed by the Court and intended to discover violations of the Court's injunction (the "Injunction")."**

47. It is true that WSS **was** developing next-generation (5G) wireless communications systems (which could be used for both land and airborne systems) that were based upon public standards (as defined by international standards bodies such as 3GPP) and were documented in the Examiner's Report. However, what SmartSky failed to articulate was that WSS' next-generation development took place independently of and was not dependent on any work that was done for Smart Sky and therefore, was not a violation of the Permanent Injunction.

48. Moreover, SmartSky's claim that all 5G non-terrestrial communication systems are dependent upon SmartSky Intellectual Property is erroneous and self-serving as no 5G systems currently in the market (independent of whatever WSS did) incorporate any SmartSky 4G intellectual property to the best of our knowledge.

49. SmartSky's notion in creating a narrative around this concept and then taking legal action based on this narrative (because it had unlimited financial means) is a prime example of the behavior that the plaintiffs were subjected to and that cost them so greatly. But this was not enough.

50. Smartsky continued this false narrative in their motion for stay as follows:

"**In addition, given the Defendants' now well-established pattern of brazenly dishonest and deceptive conduct, there remains a substantial risk that Laslo, Susan, and/or David Gross will continue to seek to develop and sell similar ATG wireless communications products through another Gross family owned business, and in violation of the Injunction.**"

51. The assertion that there was a well-known pattern of behavior and the risk referred to was a conclusory assertion without any corroborating evidence. Smart Sky's initial assertions were focused on WSS and when there was no finding of a violation of the Permanent Injunction by the Examiner, they continued to ply this same argument on the Grosses after WSS converted to Chapter 7. When no evidence of a violation became apparent, the assertion shifted to more speculative assertions; i.e., that the Grosses must or will at some point in the future violate the Injunction. This conveniently provided the "rationale" for continuing legal action. And while this Court ultimately rejected SmartSky's argument, it was at great cost to the plaintiffs.

52. Finally, these statements were not only inaccurate but they mischaracterized and sought to expand the scope of the Permanent Injunction beyond its already overbroad terms.[2]

---

[2] The Permanent Injunction only prohibits the use of SmartSky's IP, trade secrets, and confidential information, not all ATG wireless communication products. Any references to 5G communications are not mentioned and are not a derivative of any items included in the

10

53. SmartSky's usage of this expanded definition contravened the tenets of the Permanent Injunction to inflict reputational damage on the Individuals for activities that they were/are legally permitted to do as defined by the governing agreements in place among the parties (i.e.; the Teaming Agreement).

54. On July 18, 2023, this Court denied SmartSky's motion for contempt, noting that SmartSky had presented no new evidence of any violation in the nine months since being granted discovery. (See Exhibit I: Court Order Denying SmartSky's Motions).

   **"SmartSky makes no request of the court related to discovery disputes, preferring to "defer additional discovery costs on its Contempt Motion pending further developments in the [Wireless Systems] and David Gross bankruptcy cases, or until evidence develops to suggest or confirm that Laslo, Susan and/or David Gross are continuing to develop, produce, market or sell wireless communications products" in a manner that violates the injunction."**

55. The order continued **"it [SmartSky] does not allege that Defendants have violated or are currently violating the permanent injunction. Nor does SmartSky move to enlist the court's assistance in proceeding with its discovery efforts."**

---

Permanent Injunction and therefore, any activities undertaken by the Grosses relating to 5G communications are lawful and do not violate the Permanent Injunction. Yet SmartSky chose to include this wording in their motion for a stay because they believed by expanding the wording of the Injunction, they could damage the Grosses.

11

56. The Order went on to say that **"The court need no longer defer ruling on the motion for contempt while awaiting the "discovery of information suggesting a risk that Defendants are or may be violating the Injunction." (See id.)** *It is not the practice of this court to keep motions open indefinitely, especially in the absence of a forecast of any further evidence."*

57. Throughout this period, SmartSky was aware or should have been aware that its claims lacked merit, yet chose to pursue these claims regardless of the lack of evidence. This pattern of behavior demonstrates SmartSky's ulterior motive to damage Plaintiffs' business interests and reputation, rather than to protect its legitimate legal rights.

58. SmartSky's actions have directly resulted in significant financial and reputational damage to Plaintiffs. Specifically:

a. The forced conversion of WSS from Chapter 11 to Chapter 7 bankruptcy resulted in the loss of Plaintiffs' investment in WSS and the termination of ongoing business opportunities.

b. SmartSky's false allegations and legal actions damaged the Plaintiffs' professional reputations, leading to the loss of specific business opportunities with major industry players.

c. The constant threat of legal action and public allegations of dishonesty caused Plaintiffs significant emotional distress and mental anguish.

**RELATED CASES**

59. The Court is aware of the legal proceedings initiated by SmartSky in this Court as well as the bankruptcy court. These included:

12

a. The initial arbitration proceeding confirmed on February 7, 2022 (Case No. 1:20-cv-00834) in this Court;

b. The bankruptcy proceeding of Wireless Systems Solutions LLC (Case No. 22-00513-5-JNC)

c. The Motion for contempt filed in the MDNC.

d. The insurance coverage dispute (Wireless Systems Solutions v. Philadelphia Indemnity Insurance Co., No. 1:21-cv-00784 (M.D.N.C.)), also heard in this Court in which SmartSky's conduct further demonstrates its pattern of improper use of legal processes.[3]

**COUNT I: ABUSE OF PROCESS**

60. Plaintiffs reallege and incorporate by reference paragraphs 1-59 above.

61. Under North Carolina law, the elements of abuse of process are: (1) an ulterior motive to achieve a collateral purpose not within the normal scope of the process used, and (2) an act in the use of the legal process not proper in the regular prosecution of the proceeding. See Stanback v. Stanback, 297 N.C. 181, 200 (1979).

62. SmartSky willfully misused and perverted the legal process for improper purposes outside its legitimate scope, including:

---

[3] Insurance Claim: As a result of confirmation of the Arbitration Award, SmartSky sought to and was granted intervenor status in a claim filed against WSS' insurance company PIIC (1:21-cv-00784). After a ruling by the 4th Circuit Appellate Court which reversed confirmation of the Award based on lack of subject matter jurisdiction, SmartSky continued its attempts to intervene which delayed for several months a settlement among the Parties which included WSS as well as Plaintiffs Laslo Gross and Susan L. Gross. Despite the settlement, SmartSky insisted that they would only consent to the settlement so long as the Plaintiffs were not compensated with any funds. In other words, damage to the Plaintiffs was their primary objective.

13

a. Its pursuit of baseless contempt proceedings (based on alleged activities which they knew to be false) despite the Examiner's findings of no violations.

b. Its inclusion of parties (such as Susan Gross and the DAG entities) in its motions without any evidence of their involvement in alleged violations. This overly broad approach demonstrated SmartSky's intent to cast as wide a net as possible in its attempts to harm Plaintiffs and related parties.

c. Forcing WSS into liquidation, by the Motion for Contempt which derailed any efforts undertaken by WSS to emerge from Chapter 11 due to the significant resources in terms of time and money required to defend against SmartSky's unsubstantiated allegations. As a result, WSS's Chapter 11 reorganization was converted to a Chapter 7 liquidation on October 12, 2022 (See Exhibit L: Bankruptcy Court Order). This action was not a legitimate use of the legal process, but rather an attempt to eliminate a potential competitor.

d. Eliminating potential competition in the telecommunications market, as demonstrated by SmartSky's attempts to prohibit Plaintiffs from engaging in any business developing ATG wireless communication products, regardless of whether such products use SmartSky's IP (see Exhibit A: SmartSky's Memorandum of Law in support of Contempt Motion). This went beyond the scope of protecting SmartSky's legitimate interests and represented an attempt to improperly restrict lawful competition.

e. Its attempt to secure a six-month stay based on speculative future violations, as detailed in its February 2023 Motion for Stay (Exhibit G). This action was not proper in the regular prosecution of the proceeding, as it was based on speculation rather than evidence.

14

f. Causing irreparable harm to Plaintiffs' reputations and business prospects in the telecommunications industry. SmartSky's repeated unfounded allegations of dishonesty and rule-breaking were designed to damage Plaintiffs' standing in the industry.

63. SmartSky's abuse of process is further demonstrated by its conduct in the related insurance coverage dispute (Wireless Systems Solutions v. Philadelphia Indemnity Insurance Co., No. 1:21-cv-00784 (M.D.N.C.)), where SmartSky:

a. Engaged in improper "behind the scenes" discussions during mediation, asserting to the insurance company that there was no coverage, as reported by the mediator (Exhibit T: page 8);

b. Consistently disparaged Plaintiffs with irrelevant and prejudicial commentary in its filings, attempting to poison the court against Plaintiffs (SmartSky's Filings in Insurance Dispute attached as Exhibit M).

64. As a direct and proximate result of SmartSky's abuse of process, Plaintiffs suffered damages including:

a. Additional legal fees and costs totaling approximately $500,000 in the bankruptcy court alone related specifically to defending against SmartSky's improper use of legal processes, as itemized in Exhibit J.

b. The liquidation of WSS and its business opportunities, as well as the Gross's investment in WSS, valued at approximately $8,200,000 based on projected revenues from potential contracts that were disrupted by WSS' forced liquidation.

65. SmartSky acted with malice in pursuing these claims, as demonstrated by:

a. Its continuation of proceedings despite clear findings of insufficient evidence by both the Court-appointed Examiner and this Court.

b. Its pattern of defamatory statements about the Plaintiffs' characters and future conduct, which went beyond the scope of legitimate legal arguments.

> **"Defendants' now well-established pattern of brazenly dishonest and deceptive conduct"**

c. Its goal of causing maximum financial and reputational harm to Plaintiffs, as evidenced by its pursuit of criminal contempt and incarceration based on minimal and uncorroborated evidence.

d. Its inclusion of Susan Gross and David Gross in the above assertions based on their relation to Laslo Gross.

e. Its improper interference in related legal proceedings, including attempts to undermine Plaintiffs' insurance coverage claims, which demonstrated a pattern of using legal processes to harm Plaintiffs rather than pursue legitimate legal objectives.

## COUNT II: DEFAMATION

66. Plaintiffs reallege and incorporate by reference paragraphs 1-65 above.

67. Under North Carolina law, the elements of defamation are: (1) false statements about the plaintiff, (2) published to a third party, (3) with fault amounting to at least negligence, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). See Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29 (2002).

68. In its Motion for Contempt filed on March 21, 2022 (Exhibit A), SmartSky falsely stated:

16

a. "Over the 18-month life of this proceeding, Defendants have displayed utter contempt for the legal process... It is therefore regrettable, but not surprising, that Defendants are again violating a Court order---this time the permanent injunction entered by this Court just over a month ago (the "Permanent Injunction")."

b. "To date, the Defendants, with Laslo Gross as their ringleader, have been undeterred by any order or judgment, and uncowed by the exposure of their contemptuous and shameful behavior."

c. "Laslo Gross' call with Mr. Newell proves that Defendants are violating the Permanent Injunction by continuing to misappropriate and use SmartSky's IP, Confidential Information, Products and Developed IP, or derivatives thereof, to develop ATG products to operate in the 2.4 Ghz and 5 Ghz unlicensed band (for which SmartSky is the only provider currently authorized by the FCC) so as to compete against SmartSky in the aviation market. It also shows that Defendants have been violating the Tribunal's interim injunction or the Permanent Injunction since last summer, as the interim injunction was in force beginning May 21, which encompassed the timeframe when Mr. Gross first called Mr. Newell about WSS's development of an ATG system. This phone call also suggests that the WSS Defendants perjured themselves when they certified to destroying all SSN IP, Confidential Info, and Developed IP in their possession, custody or control in compliance with the Final Award. Given the Tribunal's findings as to Defendants' lack of experience in developing ATG wireless communications products for the aviation market prior to working for SmartSky, the Defendants could not realistically be developing competing ATG

17

**system to operate in SmartSky's unique unlicensed band without leveraging SmartSky IP, Confidential Information, Products, or Developed IP, or derivatives thereof."**

d. that Plaintiffs were 'willingly violating the Permanent Injunction,' despite lacking any credible evidence to support this claim.

69. In its Motion for Stay filed on February 28, 2023 (Exhibit G), SmartSky falsely accused Plaintiffs of having a **"well-established pattern of brazenly dishonest and deceptive conduct,"** and claimed that **"there remains a substantial risk that Laslo, Susan and/or David Gross will continue to develop and sell similar ATG wireless communications products through another Gross family owned business, and in violation of the Injunction."**

70. The above statements in paragraphs 68 and 69 are false because they were designed to create a false strawman narrative, despite the Court-appointed Examiner's report and this Court's ruling which indicated there was no evidence of any violation of the Permanent Injunction by Plaintiffs.

71. Specifically, there are multiple errors in the above assertions that are not only not factually correct but are an attempt to validate their false narrative. These include:

   a. That the 2.4GHz frequency band (commonly used for WiFi based products including consumer products) is SmartSky's unique licensed band and no one else can operate in that band without using SmartSky's IP. This is a false statement as anyone can and does

Case 1:24-cv-00749    Document 1    Filed 09/06/24    Page 18 of 25

operate in the 2.4GHz band (including any WiFi provider, drone provider, and even a coffee maker provider ) without using SmartSky's IP.

b. The claim that 5Ghz frequency band is SmartSky's proprietary band is also false as it is also commonly used for products using WiFi,

c. SmartSky's claim that anything developed in the above frequency bands are dependent on their IP is patently false.

72. The above statements demonstrate the lengths to which SmartSky went to to distort the truth to promote its argument, used this argument to promote its narrative, and abused the legal process to malign the Plaintiffs.

73. Despite asserting this false narrative without any evidence, SmartSky also asserted that the Plaintiffs must have perjured themselves in their actions by using this circular argument.

74. . The above statements were also false because SmartSky conceded that there was no violation of the Permanent Injunction yet tried to justify their actions by stating that WSS was too early in its development of other products and the Individual Plaintiffs were stonewalling discovery attempts. In addition, SmartSky's claim of "substantial risk" of future violations was purely speculative and was not based on any factual evidence.

75. These statements were published to third parties, and were readily available online. As such, there was a significant likelihood of harm to Plaintiffs' professional reputations.

76. SmartSky made these statements with actual malice, as it knew or should have known of their falsity based on:

a. The Examiner's report finding no violations;

b. This Court's rulings that SmartSky's evidence was insufficient;

c. SmartSky's failure to uncover any evidence of violations despite extensive discovery.

19

77. These statements constitute defamation per se as they impeach Plaintiffs in their trade or profession. In the highly specialized field of ATG communications, allegations of dishonesty and rule-breaking are particularly damaging and directly impact an individual's ability to conduct business.

78. As a direct and proximate result of SmartSky's defamatory statements, Plaintiffs suffered economic losses and other damages, including but not limited to:

   a. Loss of specific business opportunities, including:

   i. A design services contract with Lockheed Martin for the development of an advanced 5G communications system, valued at approximately $3,000,000;

   ii. A potential partnership with Amazon for the joint marketing and sale of 5G solutions for the military, estimated to be worth millions of dollars over three years;

   iii. A potential partnership with Rockwell Collins for the sale of 5G communications systems, valued at approximately $1,200,000.

79. These opportunities were lost directly due to the reputational damage caused by SmartSky's false statements, as potential business partners ceased all contact with the WSS and the Plaintiffs due to the alleged legal and ethical issues raised by SmartSky.

80. Emotional distress and mental anguish resulting from the constant threat of legal action and damage to professional reputation, for which Plaintiffs seek $500,000 in compensatory damages. This distress has manifested in symptoms including anxiety, sleeplessness, and strain on personal relationships, all directly attributable to SmartSky's actions.

20

81. Evidence of these opportunities can be found in WSS' email correspondence, which are currently held by the WSS Trustee as Plaintiffs were obliged to surrender all WSS documents following WSS' conversion to Chapter 7.

**COUNT III. TORTIOUS INTERFERENCE**

82. Plaintiffs reallege and incorporate by reference paragraphs 1-81 above.

83. Under North Carolina law, the elements of tortious interference with prospective economic advantage are: (1) a valid contract or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. Dalton v. Camp, 353 N.C. 647, 654 (2001).

84. SmartSky conducted a well-orchestrated plan whose objective was the destruction of WSS and then the individuals Laslo Gross, Susan Gross and David Gross.

85. They did this through a series of activities which included:

    **a.** Mounting a smear campaign against WSS designed to impact WSS' Chapter 11 filing by filing the motion for contempt in the MDNC.

    **b.** Filing a motion for relief from the automatic stay in the bankruptcy court such that the motion for contempt was fought on two fronts: in the bankruptcy court and the MDNC. Instead of focusing on the development of a confirmation plan that would repay WSS' creditors, WSS was required to focus all of its activities and financial resources on its defense, and thus, any possibility of emerging from Chapter 11 was neutered.

21

c. Rejecting the exoneration of WSS and seeking to ensure that information relating to the exoneration was never published.

d. Focusing efforts in the Motion for Contempt on the Individuals after WSS converted to Chapter 7.

e. Seeking to smear the Grosses' reputations in Court with no corroborating evidence.

f. Causing the Grosses to incur significant legal fees beyond the bankruptcy.

86. Attempting to interfere with the insurance case by trying to convince the insurance company that there was no claim, intervening in the claim, and attempting to stonewall any settlement that would provide compensation to the Grosses.

87. Through its pattern of legal harassment and defamatory statements SmartSky smeared the Plaintiff's reputations such that potential business partners terminated negotiations with Plaintiffs.

**CONCLUSION**

88. The pattern of behavior exhibited by SmartSky demonstrates a clear intent to use the legal system as a weapon to eliminate competition and damage Plaintiffs' standing in the industry, rather than to seek legitimate legal remedies. This abuse of the judicial process, tortious interference and SmartSky's repeated defamatory statements have caused substantial harm to Plaintiffs, both financially and to their professional reputations.

22

89. Plaintiffs therefore seek relief from this Court to remedy the damages suffered and to deter such egregious conduct in the future. By holding SmartSky accountable for its actions, this Court can not only provide justice for Plaintiffs but also send a clear message that the abuse of legal processes and the spreading of defamatory statements will not be tolerated in our judicial system.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment in favor of Plaintiffs on all counts;

B. Award Plaintiffs compensatory damages in an amount to be determined at trial, but not less than $12,200,000, broken down as follows:

i. $500,000 for legal fees and costs incurred;

ii. $8,200,000 for lost business opportunities and income;

iii. $3,000,000 for reputational damage;

iv. $500,000 for emotional distress and mental anguish;

C. Award Plaintiffs punitive damages in an amount to be determined at trial, but not less than $5,000,000, to punish SmartSky for its willful and wanton conduct and to deter similar conduct in the future;

D. Grant injunctive relief prohibiting SmartSky from:

23

i. Filing any further legal actions against Plaintiffs without first obtaining court approval;

ii. Making any public statements about Plaintiffs' business practices or ethics without substantial supporting evidence;

iii. Interfering with Plaintiffs' current or potential business relationships;

E. Award Plaintiffs pre-judgment and post-judgment interest as allowed by law;

F. Award Plaintiffs their costs and expenses incurred in this action; and

G. Grant such other and further relief as the Court deems just and proper.

Plaintiffs hereby demand a trial by jury on all issues so triable.

**VERIFICATION**

I, Laslo Gross, hereby verify under penalty of perjury that the factual allegations contained in the foregoing complaint are true and correct to the best of my knowledge, information, and belief.

Laslo Gross

Date: 9-3-24

I, Susan Gross, hereby verify under penalty of perjury that the factual allegations contained in the foregoing complaint are true and correct to the best of my knowledge, information, and belief.

24

Susan Gross

Date: 9-3-24

Respectfully submitted,


Laslo Gross, Pro Se

102 Ripplewater Lane

Cary, NC 27518

973-652-6335

laslo.gross@gmail.com


Susan Gross, Pro Se

102 Ripplewater Lane

Cary, NC 27518

919-502-2308

susan.gross@gmail.com