IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
LASLO GROSS and SUSAN GROSS,    )
                                )
            Plaintiffs,         )
                                )
    v.                          )       1:24CV749
                                )
SMARTSKY NETWORKS LLC,          )
                                )
            Defendant.          )
```

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, District Judge.

Several motions are currently before the court in this action asserting state law claim arising out of the parties' prior business relationship. Plaintiffs Laslo Gross and Susan Gross, who appear pro se, have filed a "Motion for Expedited Discovery" (Doc. 3) and a "Motion for Jurisdictional Discovery." (Doc. 15.) Defendant SmartSky Networks LLC ("SmartSky") has filed a motion to dismiss (Doc. 9), a supplemental corporate disclosure statement (Doc. 21), a motion to seal portions of its supplemental corporate disclosure statement (Doc. 22), and a "motion to limit further disclosure." (Doc. 23.) Each motion is ready for decision. For the reasons that follow, SmartSky's motion to dismiss and motion to limit further disclosure will be granted, but its motion to seal will be denied. The Grosses' motions will therefore be denied as moot.

# I. BACKGROUND

This action is the latest in a series of disputes between the Grosses and SmartSky arising from their prior business relationship. On September 6, 2024, the Grosses filed their verified complaint asserting claims for abuse of process, defamation, and "tortious interference." (Doc. 1 ¶¶ 60-87.) They simultaneously filed a motion seeking "limited, expedited discovery" related to their claims. (Doc. 3 at 1.) SmartSky responded with a motion to dismiss the complaint. (Doc. 9.)

SmartSky offers two grounds for dismissal. First, it argues that the court lacks subject matter jurisdiction over the dispute because the parties are non-diverse. (Doc. 12 at 2.) Second, it argues that the complaint fails to plead a plausible claim upon which relief can be granted. (Id. at 2-3.)

The Grosses oppose dismissal and have requested jurisdictional discovery. (Docs. 14, 15.) In relevant part, the Grosses argue that investments in SmartSky have altered its corporate structure and that discovery is needed to determine whether the court possesses subject matter jurisdiction. (Doc. 14 at 1-2.)

On April 17, 2025, the court held a hearing on these motions. At the hearing, the court directed SmartSky to file a supplemental corporate disclosure statement identifying the citizenship of its members traced through layered entities in compliance with Capps

2

v. Newmark Southern Region, LLC, 53 F.4th 299 (4th Cir. 2022). SmartSky did so, and it has identified several of its members at some level of ownership that are citizens of North Carolina. (Doc. 21.) SmartSky has asked the court to seal certain names of "entities and individuals identified in SmartSky's Supplemental Corporate Disclosure" to "protect the identities and confidentiality of SmartSky's owners and investors." (Doc. 22 at 3-4.) It also requests that the court "limit any further corporate disclosure by SmartSky," because the existing disclosure provides sufficient information for the court to determine that diversity is lacking. (Doc. 23 at 2.) The Grosses oppose sealing. (Doc. 26.)

**II. ANALYSIS**

   **A.  Subject Matter Jurisdiction**

Because SmartSky contends that the court lacks subject matter jurisdiction, that issue must be addressed first. The Grosses, as the party seeking to invoke the court's authority to act, bear the burden of establishing subject matter jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936). They have failed to do so.

Federal courts exercise limited jurisdiction. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005) (citing Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)). "Within constitutional bounds, Congress decides what

3

cases the federal courts have jurisdiction to consider." Bowles v. Russell, 551 U.S. 205, 212 (2007). Relevant to this dispute, Congress permits federal courts to adjudicate civil lawsuits involving more than $75,000 between citizens of different states, between U.S. and foreign citizens, or by foreign states against U.S. citizens. 28 U.S.C. § 1332(a). The parties must be completely diverse — that is, no plaintiff may be a citizen of the same state as any defendant. Exxon, 545 U.S. at 553. This requires the court to examine the citizenship of the litigants. See Axel Johnson, Inc. v. Carroll Carolina Oil Co., 145 F.3d 660, 663 (4th Cir. 1998) (distinguishing "citizenship" and "domicile" from a litigant's "residence" when assessing diversity jurisdiction). The court does so by determining the parties' citizenship at time the action was filed. Grupo Dataflux v. Atlas Glob. Grp., L.P., 541 U.S. 567, 570–71 (2004). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction," the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citations omitted).

Although corporations are citizens of both the state (or country) in which they are incorporated and have their principal place of business, see 28 U.S.C. § 1332(c)(1), the citizenship of

4

an unincorporated association is determined by the citizenship of its individual members.  Americold Realty Tr. v. Conagra Foods, Inc., 577 U.S. 378, 381 (2016) (citations omitted).  The end result is that "every association of a common-law jurisdiction other than a corporation is to be treated like a partnership."  Indiana Gas Co. v. Home Ins. Co., 141 F.3d 314, 317 (7th Cir. 1998) (citing Carden v. Arkoma Assocs., 494 U.S. 185, 190 (1990)).  Thus, a limited liability company's "citizenship is that of its members." Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 121 (4th Cir. 2004); Capps, 53 F.4th at 302.

It is undisputed that the Grosses are North Carolina citizens. (Docs. 1 ¶¶ 2-3, 9 at 2.)  Therefore, if SmartSky is a citizen of North Carolina, diversity does not exist, and the court must dismiss the case for lack of subject matter jurisdiction.  See United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009).  Because SmartSky is a limited liability company, it is a citizen of each state in which one of its members is a citizen, and the court must "trace [SmartSky]'s citizenship through [its] layered entities."  Capps, 53 F.4th at 302.

SmartSky's supplemental corporate disclosure indicates that several of its members are North Carolina citizens.  SmartSky reports that 100% of its membership interests are owned by SmartSky Midco, LLC.  (Doc. 24 ¶ 1.)  SmartSky Midco, LLC is entirely owned by SmartSky New HoldCo, LLC.  (Id. ¶ 2.)  SmartSky New HoldCo,

5

LLC's interests are divided into common and preferred membership interests. (Id. ¶¶ 3-4.) SmartSky New HoldCo, LLC's common membership interests are entirely owned by SmartSky Investco, LLC, (Id. ¶ 3), but multiple private equity firms own preferred interests in SmartSky New HoldCo, LLC. (Id. ¶ 4.) SmartSky Investco, LLC's common membership interests are entirely owned by SmartSky Holdings, LLC. (Id. ¶ 5.) And a variety of "individuals and entities" are members of SmartSky Holdings, LLC. (Id.)

As relevant here, SmartSky has identified seven individuals who reside in North Carolina and own common membership interests in SmartSky Holdings, LLC. (Id.) Although they are characterized as "membership interests," they qualify as members for the purpose of evaluating SmartSky's citizenship. See Carden v. Arkoma Assocs., 494 U.S. 185, 189-192, 197 (1990). Similarly, seven North Carolina citizens own preferred membership interests in SmartSky Investco, LLC. (Id. ¶ 6(e).) Therefore, SmartSky is deemed a citizen of North Carolina.[1] Because the Grosses and SmartSky are both North Carolina citizens, the court lacks subject matter

---

[1] SmartSky reports that, with one exception, its supplemental corporate disclosure statement reflects its membership on September 6, 2024, the date the Grosses filed their complaint. (Doc 27 ¶ 4.) The lone exception is that the membership interests identified in paragraph 7 of SmartSky's supplemental corporate disclosure statement were not transferred to the listed North Carolina LLC owner until December 2024. (Id.) Because the court evaluates SmartSky's citizenship by referring to its membership at the time of the action was initiated, Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570-71 (2004), the court has not considered the citizenship of these entities to determine SmartSky's citizenship.

6

jurisdiction pursuant to 28 U.S.C. § 1332.

The Grosses' contrary arguments miss the mark. The Grosses bore the burden of demonstrating, by a preponderance of the evidence, that the parties are citizens of different states. See Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC, 615 F. Supp. 3d 379, 383 (M.D.N.C. 2022) (citing Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y., 822 F.3d 739, 748 (4th Cir. 2016)). But they did not argue or produce evidence indicating that the relevant members in SmartSky's ownership structure are citizens of a state other than North Carolina. Instead, they baldly assert that the court "cannot properly evaluate the jurisdictional significance" of the members' interests in SmartSky "without transparency regarding the timing, circumstances, and documentation of their evolving roles" at SmartSky. (Doc. 25 at 5.) This is immaterial. Because SmartSky has identified North Carolina members, whether they also serve as "executives/operational officers" of the company would not bear on the jurisdictional inquiry. (Id. at 4-5); Carden, 494 U.S. at 192. The Grosses have not offered any evidence that calls the citizenship of the North Carolina members in SmartSky Holdings, LLC or SmartSky Investco, LLC into question. (Doc. 24 ¶¶ 5, 6(e).) The court therefore lacks subject matter jurisdiction based on 28 U.S.C. § 1332, and SmartSky's motion to dismiss will be granted.

7

**B. Motion to Seal**

SmartSky also requests that the court seal portions of its supplemental corporate disclosure statement to prevent the identity of its investors to be publicly available. (Doc. 22.) The Grosses oppose sealing, arguing that "[t]here is a strong presumption in favor of public access to judicial records," that the material "is central to resolving the issue of subject matter jurisdiction" and "must be open to public scrutiny," that SmartSky "has failed to demonstrate any concrete, specific harm that would result from public disclosure of the identities of its upstream owners," that investor identities are "not trade secrets or privileged materials," and that "[b]lanket sealing is overbroad." (Doc. 26 at 1-2.)

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "The operations of the courts and the judicial conduct of judges are matters of utmost public concern," Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978), "and the public's business is best done in public." Cochran v. Volvo Grp. N. Am., LLC, 931 F. Supp. 2d 725, 727 (M.D.N.C. 2013).

When a party makes a request to seal judicial records, "a district court must comply with certain substantive and procedural requirements." Va. Dep't of State Police v. Washington Post, 386

8

F.3d 567, 576 (4th Cir. 2004). Procedurally, the court must (1) give the public notice and a reasonable opportunity to challenge the request to seal; (2) "consider less drastic alternatives to sealing"; and (3) if it decides to seal, make specific findings and state the reasons for its decision to seal over the alternatives. Id. "As to the substance, the district court first 'must determine the source of the right of access with respect to each document,' because '[o]nly then can it accurately weigh the competing interests at stake.'" Id. (quoting Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 181 (4th Cir. 1988)). "Generally, the public interest in disclosure heightens as the underlying motions are directed more to the merits and as the case proceeds toward trial." SmartSky Networks, LLC v. Wireless Sys. Sols., LLC, 630 F. Supp. 3d 718, 732 (M.D.N.C. 2022) (citations omitted). Under this court's Local Rules, "[n]o motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to why sealing is necessary and why less drastic alternatives will not afford adequate protection, with evidentiary support." M.D.N.C. L.R. 5.4(c)(3).

The right of public access derives from both the common law and the First Amendment. See Washington Post, 386 F.3d at 575. "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial

9

records and documents." Stone, 855 F.2d at 180 (citation omitted). Accordingly, in any given case, some documents will "fall within the common law presumption of access," others will be "subject to the greater right of access provided by the First Amendment," and some "may not qualify as 'judicial records' at all." United States v. Moussaoui, 65 F. App'x 881, 889 (4th Cir. 2003) (unpublished)[2] (citing United States v. Amodeo, 44 F.3d 141, 145–46 (2d Cir. 1995)). A document is a "judicial record," and therefore subject to the common law presumption of access, if it plays a role in the adjudicative process, adjudicates substantive rights, or was "filed with the objective of obtaining judicial action or relief." United States ex rel. Oberg v. Nelnet, Inc., 105 F.4th 161, 171 (4th Cir. 2024) (citation and internal quotation marks omitted).

The purpose of Rule 7.1 disclosures is to permit the court to accurately determine whether it possesses diversity jurisdiction early in the litigation and to assess whether recusal is appropriate. Mayer v. Patriot Pickle Inc., No. 23-CV-1299, 2024 WL 162881, at *5 (W.D.N.Y. Jan. 16, 2024) (citing Amodeo, 44 F.3d at 145). SmartSky's supplemental corporate disclosure provided the court with sufficient information to address both issues. Its

---

[2] Unpublished opinions of the Fourth Circuit are not precedential but can be cited for their persuasive, but not controlling, authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006)

10

disclosure identified several North Carolina citizens with membership interests in SmartSky, which enabled the court to conclude that it lacks diversity jurisdiction in the action. (Doc. 24 ¶¶ 5, 6(e).) And it identified the entities and individuals with interests in sufficient detail for the court and parties to conclude that recusal is not warranted. There is no showing that the additional disclosures the Grosses request would alter these conclusions, and the Grosses have not cast any doubt on the citizenship of SmartSky's North Carolina citizen members. The corporate records they request are therefore irrelevant to the questions at hand.

SmartSky cites the court's authority pursuant to Federal Rule of Civil Procedure 7.1(a) to limit the scope of SmartSky's required corporate disclosure. (Doc. 23 at 2.) SmartSky observes that the Advisory Committee Notes to the 2022 Amendments to Rule 7.1 recognize:

> Disclosure might be cut short when a party reveals a citizenship that defeats diversity jurisdiction. Or the names of identified persons might be protected against disclosure to other parties when there are substantial interests in privacy and when there is no apparent need to support discovery by other parties to go behind the disclosure.

Fed. R. Civ. P. 7.1(a) advisory committee's note to 2022 amendment; (Doc. 23 at 2.) SmartSky argues that because its supplemental disclosure demonstrates that the court lacks diversity jurisdiction, additional information regarding the citizenship of

11

its members would not alter that conclusion, its members have privacy interests to justify sealing, and requiring more granular disclosures would be burdensome and unhelpful to the court. (Doc. 23 at 2.)

Because the court has sufficient information to determine both that subject matter jurisdiction is lacking and that there is no basis for recusal, SmartSky will not be required to supplement its corporate disclosure statement. <u>Accord</u> <u>Niemann v. Carlsen</u>, No. 4:22-cv-01110, 2023 WL 22038, at *2 (E.D. Mo. Jan. 3, 2023) (limiting parent LLC's corporate disclosure statement to membership of its "HoldCo." LLC where its corporate structure "comprised of several layers of LLC and limited partnership members, which themselves likely include[d] thousands of members and partners"). Here, SmartSky has represented that providing even more detailed identification of additional members would require significant and potentially burdensome efforts. (Doc. 23 at 2-3.) But because the corporate disclosure statement played a role in the adjudicative process, it is a judicial record to which at a minimum the common law presumption of public access applies. This requires the court to balance the common law right of public access against the interests that SmartSky contends warrant sealing.

Here, SmartSky has not shown that sealing the corporate disclosure statement is warranted, as it has not demonstrated that

12

its various investors have a substantial interest in nondisclosure that outweighs the presumption of public access. SmartSky argues that "[t]he names and identities of entities and individuals in SmartSky's upstream corporate ownership structure do not need to be revealed on the public record of this proceeding for purposes of the claims in this litigation or the motions currently pending before the Court." (Doc. 22 at 3.) It concludes that "[t]here is no adequate alternative to sealing portions of SmartSky's Supplemental Corporate Disclosure, as public filing will reveal the identities of these investors in SmartSky's upstream entities." (Id.) While that is true, it fails to carry SmartSky's burden.

It is understandable that third party investors who did not ask to be sued may wish to remain anonymous. However, SmartSky cites no authority supporting its position that the generalized privacy interests of third-party investors outweigh the right of public access associated with the common law in this circumstance. As the party seeking to overcome the public right of access, SmartSky bore the burden of identifying and presenting "some significant interest that outweighs the presumption" of public access. Washington Post, 386 F.3d at 575 (citation and internal quotation marks omitted). SmartSky's contention of privacy as to the names of the corporate entities and individual members in the LLC chain is conclusory and fails to overcome the public's right

13

to access to their identity, as they were integral to the court's decision on subject matter jurisdiction. Accord Dalton Archery, LLC v. Bowtech, LLC, No. C.A. 23-140, 2023 WL 2755760, at *1 (D. Del. Apr. 3, 2023) (denying LLC's request to seal an exhibit to its corporate disclosure statement where the LLC did not explain how its "business interests could suffer harm by the public disclosure of the identity and citizenship of its owners"); Mayer, 2024 WL 162881, at *4-5 (rejecting LLC's attempt to seal its corporate disclosure statement and observing that "a party cannot evade the requirements of Rule 7.1(a) merely by asserting that the Court already has 'sufficient information to evaluate diversity jurisdiction'" (citing Driver Opportunity Partners I, LP v. Ameriserv Fin., Inc., 2023 WL 4711158, at *3 (W.D. Pa. July 24, 2023))); Wiens Cap. Mgmt., LLC v. Advocate Consulting Legal Grp., PLLC, No. 2:23-cv-81, 2023 WL 2435806, at *1-2 (M.D. Fla. Feb. 16, 2023) (holding that an LLC's appeal to the "privacy interests of [its] members" failed to overcome the presumption of public access). While the public right of access is strongest as to the identities of SmartSky's North Carolina members, upon which the court's subject matter jurisdiction decision rests, the names of the other members of the organizations were important to the court's subject matter and recusal analysis.

### III. CONCLUSION

For the reasons stated,

IT IS ORDERED that Defendant's motion to dismiss (Doc. 9) is GRANTED and the complaint is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that Defendant's motion to seal (Doc. 22) is DENIED and that SmartSky's supplemental corporate disclosure and motion to limit further disclosure (Doc. 24) shall be unsealed five days after the entry of this Order.

IT IS FURTHER ORDERED that the Grosses' motions for expedited discovery (Doc. 3) and jurisdictional discovery (Doc. 15) are DENIED AS MOOT.

                                                /s/   Thomas D. Schroeder
                                                United States District Judge

June 20, 2025